BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation | : : | MDL NO. 2672 |
| This Document Relates To: ALL CASES | : : : : | *Lucas, et. al. v. Volkswagen, et al.* Case 1:15-cv-01988-JG  (N.D. OH September 24, 2015) |

_____

**INTERESTED PARTY RESPONSE SUPPORTING CONSOLIDATION IN THE
NORTHERN DISTRICT OF OHIO**
_____

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Anthony Lucas and Shawn Brandewie ("Plaintiffs"), respectfully submit this memorandum of law in response to the Motion for Transfer and Consolidation or Coordination of the Related Actions brought by Plaintiff Christopher J. D'Angelo on September 23, 2015 (Dkt. 1).

Plaintiffs, like Mr. D'Angelo, seek coordination and consolidation of all Related Actions.  Plaintiffs recommend the related actions be centralized in the Northern District of Ohio, a jurisdiction which: (1) has a long and successful history of managing product liability MDLs; (2) represents a geographically central location for a mass litigation that

is national in scope; (3) has a docket primed to handle this litigation; (4) already has related matters pending in the district; and (5) boasts a number of experienced and capable MDL jurists, particularly the Honorable James S. Gwin, who presides over Plaintiffs' case.

## I.     BACKGROUND

Plaintiffs, owners of Volkswagen "clean diesel" vehicles, have sued Volkswagen for fraudulently misrepresenting the emissions associated with those vehicles and covertly installing software designed specifically to keep consumers or regulators from ever finding out.  Plaintiffs are hardly alone.

Last week, cases, primarily state-wide class actions, were filed in jurisdictions across the country, each alleging nearly identical unlawful and fraudulent conduct on the part of Volkswagen.  Indeed, undersigned counsel for the Plaintiffs in the *Lucas* action are also counsel for the Plaintiffs in *Weiland v. Volkswagen Group of America, Inc.*, et al 9:15-cv-81316-DMM (S.D. Florida, September 22, 2015), *Triplett v. Volkswagen Group of America, Inc. et al*, 15-cv-00076-HRW (E.D. Kentucky, September 24, 2015); and *Greene v. Volkswagen Group of America, Inc. et al* 2:15-cv-02857-MHW-TPK (S.D. Ohio, September 24, 2015).

This high volume of cases is suggestive not just of the geographic scope of the problem, but of the quantum of wrongdoing and harm involved.  This is not a case in which a Defendant made a mistaken calculation, stated an overly optimistic assumption or failed to be thorough.  This is an active and knowing scheme by Volkswagen to defraud millions of consumers.  The fraud stands to substantially injure the environment, the economy and the public trust in ways that may be immeasurable.  But it has already damaged each and every Volkswagen customer who purchased the vehicles in

question in a way that can be calculated in dollars and cents. That is the purpose of this lawsuit.

## II.     FACTS

Volkswagen installed "defeat devices" in certain diesel vehicles sold in America in a deliberate attempt to evade the regulations on emission testing. The Volkswagen Defendants then marketed these illegal vehicles as being "clean diesel" vehicles and sold them to consumers for a premium price. This scheme went on for years, affecting hundreds of thousands of vehicles sold in the U.S. and millions of vehicles worldwide. On September 18, 2015 the curtain was pulled when the U.S. Environmental Protection Agency "determined that VW manufactured and installed defeat devices in certain model year 2009 through 2015 diesel light-duty vehicles equipped with 2.0 liter engines. These defeat devices bypass, defeat, or render inoperative elements of the vehicles' emission control system that exist to comply with [Clean Air Act] emission standards."[1] Specifically, the software could determine when the vehicle was being tested and would switch the emission system to a different calibration setting so the vehicle produced compliant emission results

The Volkswagen Defendants installed these defeat devices in the Defective Vehicles in order to pass the EPA required emission testing, when in fact the Defective Vehicles emitted up to 40 times the pollution allowed by law. Worse still is that the Volkswagen Defendants heavily marketed the Defective Vehicles to consumers such as the Plaintiffs and other Class Members as being "clean diesel" vehicles.

---

[1] See EPA Notice of Violation, dated September 18, 2015, at 1 (attached hereto as **Exhibit A**)

While it is true that Volkswagen has recently "confessed" to their wrongdoing, it was not due to a pang of conscious – instead, only when it became clear that the EPA and the California Air Resources Board would not approve their 2016 model year diesel cars, did the Volkswagen Defendants "admit that it designed and installed a defeat devices in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing."[2]

The Volkswagen Defendants have committed outright fraud against its consumers and the American people.

## III.    CONSOLIDATION

Centralization under 28 U.S.C. § 1407(a) is appropriate when: (1) the cases involve one or more common questions of fact; (2) transfer would serve the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of the actions.  *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2010) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").

Applying the criteria commonly considered by the MDL Panel, the Northern District of Ohio is the most appropriate forum, and would maximize both the efficiency of litigation and the convenience of the parties and witnesses.

### A.  COMMON QUESTIONS OF FACT

The threshold requirement for centralization under Section 1407 is the presence of "common questions of fact."  *In re Packaged Ice Antitrust Litig.*, 560 F.Supp.2d 1359,

---

[2] EPA Notice of Violation, dated September 18, 2015, at 4, **Exhibit A**.

1360 (J.P.M.L. 2008). However, absolute uniformity among claims is not needed for actions to be centralized. *See In re Antibiotic Drugs*, 309 F.Supp. 155, 156 (J.P.M.L. 1970) ("applicability of different legal principles will not prevent transfer of an action under section 1407 if the requisite common questions of fact exist") (citation omitted).

Here, the Actions – whether sounding in fraud, breach of warranty, or otherwise - are commonly based on the Defendants' intentional misrepresentations to consumers and environmental groups regarding the product attributes of their diesel vehicles. As such, the common factual and legal questions present in each of the Actions support centralization.

### B. CONVENIENCE

Given the sheer number of Plaintiffs involved here, a number currently estimated to be on the order of half a million[3] and the number of jurisdictions in which cases have already been filed (at least 35 as of last count) and likely be filed (essentially everywhere), consolidation is clearly in the interest of judicial convenience. For Defendants, the possibility of global resolution and a reduced cost of litigation are more convenient than the potential of defending hundreds if not thousands of cases in every jurisdiction over a period of years if not decades. For Plaintiffs, while the damages in the case are yet to be determined, they would potentially be eroded if each Plaintiff was required to collect the requisite evidence, admissions and damages analysis in support of his or her own claim. Even the remedy of individual state class actions is less

---

[3] "What VW Vehicle Owners Need to Know" Financial Times, September 24, 2015, http://www.ft.com/cms/s/2/f0734f0e-621d-11e5-a28b-50226830d644.html#axzz3mnMygaEd (last referenced 9/28/2015)

5

efficient for each party and the Courts than a consolidated national action.  Each of the parties and the Court are best served by consolidation.

### C. EFFICIENCY

Centralization is appropriate when it will "promote the just and efficient conduct of the litigation." *In re Packaged Ice Antitrust Litig*, 560 F.Supp.2d at 1360.  Here, each of the Actions shares the common core allegation that Volkswagen fraudulently misrepresented the true emissions levels of its diesel engines.  Thus, the risks of inconsistent rulings and needless duplication of resources and efforts can be avoided through centralization or consolidation of the Actions.  Avoidance of inconsistent rulings is particularly important where, as is the case here, all the Actions are brought on behalf of nearly identical or overlapping classes of plaintiffs.  *See In re Nat'l Airlines,Inc. Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 399 F.Supp. 1405, 1407 (J.P.M.L. 1975).

Each of the actions is very recently filed and all litigation is at an early stage.  As such, centralization of the Actions will "eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to the issue of class certification), and conserve the resources of the parties, their counsel and the judiciary." *Packaged Ice*, 560 F.Supp.2d at 1361.

### IV.  CONSOLIDATION SHOULD OCCUR IN THE NORTHERN DISTRICT OF OHIO

In determining which transferee venue will best serve the goals of Section 1407, the Panel balances a number of factors in determining the transferee forum, including: the experience, skill and caseloads of the available judges; the number of cases pending in the jurisdiction; the convenience of the parties; the location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See In re:*

6

*Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F.Supp. 1027, 1029 (J.P.M.L. 1977); *In re: Tri-State Crematory Litig.*, 206 F.Supp. 1376, 1378 (J.P.M.L. 2002); and *In re: Lipitor (No. II)*, 997 F. Supp. 2d at 1357.  Of the factors the Panel considers when determining the transferee forum, the judicial experience, the number of pending cases and available resources, the minimization of cost and convenience of the parties, and the location of the witnesses and evidence weighs heavily in favor of the Northern District of Ohio.

> **A. JUDGE GWIN AND THE NORTHERN DISTRICT OF OHIO HAVE THE REQUITE EXPERIENCE AND RESOURCES TO EFFECTIVELY HANDLE THE CONSOLIDATED ACTION.**

Because of the breadth and nature of this case, it is of the upmost importance to find "a transferee judge with the time and experience to steer this complex litigation on a prudent course"  *In re Meridia Products Liab. Litig.*, 217 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002).  The Northern District Judiciary, and Judge Gwin specifically, are experienced judges with a history of managing high stakes multidistrict class actions, including those specifically related to defective products.  Judge Gwin recently oversaw *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation* (MDL No. 2001), a case – like this one – that involved a design defect in a consumer durable which was alleged to significantly reduce the product's value.  That matter was consolidated in front of Judge Gwin in 2008 and went to trial in late 2014 after multiple trips to the Sixth Circuit in which Judge Gwin's rulings were upheld.  Judge Gwin also oversaw *In re: Meridia Products Litigation* (MDL No. 1482), another MDL matter he brought to successful resolution.

In fact, the Northern District of Ohio has brought about successful resolution in numerous recent MDLs including *In Re: DePuy Orthopaedics, Inc., ASR Hip Implant*

*Products Liability Litigation* (MDL No. 2197) *In re*: *Gadolinium Contrast Dyes Products Liability Litigation* (MDL No. 1909); *In re: Heparin Products Liability Litigation* (MDL No. 1953) and others.  These matters are entirely or largely resolved and the Northern District of Ohio is ready and able to take on and bring swift resolution to another major products liability matter.

Further, the Northern District of Ohio and Judge Gwin specifically have the time and resources necessary to commit to an undertaking of the breadth contemplated here.  The Panel has articulated a preference for centralizing proceedings in a district court that is not already inundated with other filings, such as in other MDL's. *See, In re Teflon Prods. Liab. Litig.*, 416 F.Supp.2d 1364; *In re National Century Financial Enterprises, Inc.*, 293 F.Supp.2d 1375, 1377.  There are presently only six MDL's pending in the Northern District of Ohio, compared to 18 in the District of New Jersey and 14 in the Central District of California[4]  It has been five years since an MDL was sent to the Northern District of Ohio and 6 years since one was sent to Cleveland.

The overall number of civil filings in the Northern District of Ohio is on a decline.  The court's 2015 annual report provides:

> **Civil Docket.** Civil case filings decreased 21.1% from 4,455 in calendar year 2013 to 3,516 in 2014 due to a decrease in MDL filings which fell 60.7% from 1,582 to 622. Traditional civil case filings increased by 0.7 from 2,870 in 2013 to 2,890 in 2014. Civil case closings increased 27.5% from 3,400 in 2013 to 4,335 in 2014. The number of pending civil

---

[4] *See*, MDL Statistics Report – Pending MDLs by District as of July 15, 2015, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-15-2015.pdf

cases decreased by 7.4% from 11,067 in 2013 to 10,247 in 2014, primarily due to the MDL docket.[5]

Finally, Judge Gwin is an experienced jurist, having sat on in the Northern District since being appointed by President Clinton in 1997.  He has sat by designation on the Sixth Circuit Court of Appeals, the U.S. District Court for the District of Columbia, the Ninth Circuit Court of Appeals and others.   He is well known throughout the country and well thought of by his peers on the bench.  As this panel wrote has previously written "by centralizing this litigation in the Northern District of Ohio before Judge James S.Gwin" the panel will be "assigning this litigation to a seasoned jurist in a district with the capacity to handle this litigation."  *In re Meridia Products Liab. Litig.*, 217 F. Supp. 2d at 1378.

## B.  CLEVELAND IS A PRACTICAL AND EFFICENT LOCATION

This litigation, by its nature, lacks a true geographic center.  The primary Defendant and a majority of those in decision making roles for the company are headquartered in Germany.  Volkswagen's primary U.S. affiliate is incorporated in New Jersey.  The corporate headquarters of that same U.S. affiliate is in Virginia.  The California Air Resources Board was involved in discovering the malfeasance.  A tremendous amount of the continent's diesel fuel is refined off the coast of Texas and Louisiana in the Gulf of Mexico.  Volkswagen manufacturers certain vehicles, though none at issue here, in a plant in Tennessee. And, of course, the vehicles at issue have been purchased by residents of all 50 states and their illegal emissions into the atmosphere affect the entire country.

---

[5] U.S. District Court for the Northern District of Ohio 2015 Annual Report, http://www.ohnd.uscourts.gov/assets/Information_About_the_Court/Annual_Reports_and_Assessments/Annual-Report-2015.pdf

9

The Northern District of Ohio offers a central location for all plaintiffs and their counsel residing anywhere in the country.  It is a short flight from cities on the eastern seaboard and a shorter flight from the west coast than New Jersey or Florida.

The Cleveland CSA has a population of over 3.5 million and is therefore currently the 15th largest metropolitan area in the country. It has a recently remodeled airport and a variety of high quality hotel space recently brought on line in light of the Republican National Convention coming to the city in the summer of 2016.  The Carl B. Stokes Federal Courthouse is among the most modern and technically advanced facilities in the federal system, having just opened in 2002 and featuring state-of-the-art courtroom equipment and facilities. Cleveland's airport is no more than a 15 minute ride to the Stokes Courthouse by train or taxi, and the Courthouse sits in downtown Cleveland and is within walking distance from many comfortable hotels.  The Northern District of Ohio has an experienced and well respected bench, consisting of 14 judges and 7 magistrates.

Finally, four cases are already pending in federal court in Ohio and two are already pending before Judge Gwin.  Judge Gwin's experience, capability, and efficiency will allow him to proceed with these matters in a timely way.  We anticipate having meaningfully advanced these cases by the time the panel meets to decide where this matter should be consolidated.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs Anthony Lucas and Shawn Brandewie respectfully request the Panel transfer all related actions to the Northern District of Ohio for consolidated or coordinated pre-trial proceedings before Judge Gwin or any of the other highly qualified judges in that District.

**Dated:  September 29, 2015**

        */s/ William B. Eadie*
PETER H. WEINBERGER (0022076)
PETER J. BRODHEAD (0006733)
DENNIS R. LANSDOWNE (0026036)
STUART E. SCOTT (0064834)
NICHOLAS A. DICELLO (0075745)
DANIEL FRECH (0082737)
WILLIAM B. EADIE (0085627)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio  44114
(216) 696-3232 | (216) 696-3924 (FAX)
*pweinberger@spanglaw.com*
*pbrodhead@spanglaw.com*
*dlansdowne@spanglaw.com*
*sscott@spanglaw.com*
*ndicello@spanglaw.com*
*dfrech@spanglaw.com*
*weadie@spanglaw.com*
www.spanglaw.com

***Counsel for Anthony Lucas and Shawn Brandewie and the Proposed Class***

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| **In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation** | : : | MDL NO. 2672 |
| This Document Relates To: ALL CASES | : : : : | *Lucas, et. al. v. Volkswagen, et al.* Case 1:15-cv-01988-JG  (N.D. OH September 24, 2015) |

_____

### CERTIFICATE OF SERVICE
_____

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that, on September 29, 2015, a copy of **INTERESTED PARTY RESPONSE SUPPORTING CONSOLIDATION IN THE NORTHERN DISTRICT OF OHIO** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the Electronic Mail Notice List, and sent via regular U.S. Mail to the following:

Volkswagen Group of America, Inc.  
2200 Ferdinand Porsche Dr.  
Herndon, VA 20171

Volkswagen AG  
P.O. Box 1849  
D-38436 Wolfsburg  
Germany

Audi AG  
Inglostadt  
Bayern 85057  
Germany

Audi USA  
2200 Ferdinand Porsche Dr.  
Herndon, VA 20171

*/s/ William B. Eadie*
WILLIAM B. EADIE (0085627)
**SPANGENBERG SHIBLEY & LIBER LLP**

*One of Counsel for Anthony Lucas and Shawn Brandewie and the Proposed Class*