BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | )<br>) MDL Docket No.: 2672<br>) |

**INTERESTED PARTY RESPONSE OF *DEFIESTA* PLAINTIFFS TO PENDING MOTIONS FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407**

Denise DeFiesta, Carrie Lespina and John Fernandez (together, "the *DeFiesta* Plaintiffs") respectfully submit this response to the pending motions for transfer and centralization pursuant to 28 U.S.C. § 1407 of all actions seeking economic and equitable remedies for VW and Audi "clean diesel" vehicles. As of this filing and as the attached chart shows, there are more than 175 cases pending before at least 60 judges in at least 40 districts around the country, with more cases filed daily. As explained below, the *DeFiesta* Plaintiffs support transfer and centralization of these actions and respectfully request the Panel to transfer these actions to the United State District Court for the District of New Jersey, where twenty "clean diesel" class actions are pending and have been assigned to the Honorable Jose L. Linares with additional filings every day.

**INTRODUCTION**

This is by any measure an extraordinary case. On September 18, 2015, the United States Environmental Protection Agency ("EPA") issued a Notice of Violation ("NOV")[1] to Volkswagen Group of America, Inc. ("VW") detailing VW's illegal use of a software-based "defeat device" in diesel automobiles manufactured since 2009. The sole purpose of this device was to cheat on emissions tests by engaging full emissions controls only when undergoing

---

[1] This NOV is available at http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf.

official emissions testing. At all other times, the emissions controls are de-activated, and the vehicles emit noxious pollutants at up to 40 times the legal limit.

While Defendant has admitted the conduct that forms the heart of the liability case, these admissions do not provide any relief to the nearly 500,000 owners and lessees of these vehicles in the United States.[2] Plaintiffs, like the other purchasers and lessees of these vehicles, are now saddled with vehicles with illegal, pollution-spewing diesel engines and dramatically lower resale values. Indeed, this is the great irony of VW's fraud: VW marketed and sold these cars specifically as environmentally friendly "clean diesel" vehicles, while in fact they were belching emissions into the atmosphere at levels far exceeding EPA standards.

Thus, consumers who purchased these more expensive vehicles believing they were doing their part to reduce pollution became the unknowing agents of the continued degradation and pollution of the environment. Worse still, these vehicles cannot legitimately pass vehicle inspections, rendering the automobiles impossible to re-register and drive legally. Many owners report that dealers will not buy back these vehicles or take them as trade-ins at any price. The correction of these vehicles, which VW is obligated to undertake, and which will take many months to complete, will diminish their performance, and hence their value. Either way, Plaintiffs lose. The class of owners and lessees face a Hobson's choice they never could have anticipated when they purchased the VW and Audi vehicles VW marketed, labelled, and sold as "clean diesel".

Since the EPA's September 18, 2015 NOV, more than 175 substantially similar, putative class action lawsuits have been initiated in federal courts against the same defendant by various customers of VW who had purchased or leased affected VW diesel vehicles. In each of these

---

[2] Recently, additional models have been implicated in the fraud, and this number will be increasing. *See* http://www.bbc.com/news/business-34377443 (last visited September 28, 2015)

actions, the named plaintiffs rely on the same facts and are seeking the same type of economic relief and centralization in a single federal court will hasten and facilitate a comprehensive program of buyback, correction and compensation to make defrauded owners and lessees whole.

The uniformity of the actions makes centralization appropriate, and the best transferee forum for these actions is the District of New Jersey, VW's home state, which has demonstrated that it is well equipped to handle complex class action cases of this nature. The Honorable Jose L. Linares, who has been assigned all of the cases filed in the District of New Jersey, is an able and experienced judge who can facilitate swift and efficient resolution of the claims of each and every one of the over 500,000 owners and lessees of the VW "clean diesel" vehicles.

## ARGUMENT

All of the cases filed since the EPA's September 18, 2015 NOV disclosing VW's design and implementation of the "defeat devices" address the same underlying conduct and decisions. Coordination is necessary to avoid duplicative discovery, promote just and efficient conduct of these cases, and prevent inconsistent rulings.

Transfer to the District of New Jersey before the Honorable Jose L. Linares is appropriate because Judge Linares has significant experience presiding over MDLs and other complex civil litigation. Moreover, Judge Linares' courtroom in Newark, New Jersey, is easily accessible and geographically central to the parties, witnesses and evidence, including Germany, the location of VW's leading technical centers and where key decisions to implement and perpetuate the "defeat device" scheme were made. Indeed, New Jersey is a familiar and convenient forum for VW: VW maintains key Product Liaison, Fleet and Regional Management operations in New Jersey, and it has sold or leased tens of thousands of "clean" diesel light-duty vehicles to New Jersey residents since VW began its scheme in 2009. Most importantly, New Jersey is where VW

maintains its American Engineering and Environmental Office (EEO) which, among other responsibilities has made presentations earlier to Congress about VW's "clean diesel" technology and will be an important focus for discovery.[3] New Jersey is also the state of incorporation of VW, evidencing VW's decision to be bound by New Jersey's corporate regime – a factor that may prove significant in terms of corporate governance and other relief in this case. Because *DeFiesta* and other class cases are on file there, this litigation can be tried, if necessary, as well as settled there.

## I. TRANSFER AND COORDINATION PURSUANT TO 28 U.S.C. § 1407 IS APPROPRIATE.

28 U.S.C. §1407 authorizes the JPML to transfer actions sharing common questions of fact to a single district for coordinated or consolidated pretrial proceedings. The *Defeista* Plaintiffs respectfully submit that, in this case, there is no question that centralization is appropriate. A detailed recitation of the well-known standards is therefore unnecessary, and we will rely upon the Panel's familiarity with the governing legal principles.

## II. TRANSFER TO THE DISTRICT OF NEW JERSEY AND JUDGE LINARES IS APPROPRIATE.

### A. Transfer to the District of New Jersey Is Appropriate.

The *DeFiesta* Plaintiffs respectfully submit that the Panel should transfer these cases to the District of New Jersey for centralized and expedited case management. The selection of an appropriate transferee forum depends greatly on the specific facts and circumstances of the litigation being considered for coordination and involves a "balancing test based on the nuances of a particular litigation," that considers several factors. *See* Robert A. Cahn, *A Look at The Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1977).

---

[3] *See* http://dieselforum.org/files/dmfile/Briefings-Volkswagen.pdf.

MDL actions are commonly transferred to a forum where one or more similar actions are pending. *See* I*n re: Medical Capital Sec. Litig.*, 706 F. Supp. 2d 1378 (J.P.M.L. 2010) (district selected because three of four actions were already consolidated there); *In re Satyam Computer Svcs, Ltd., Sec. Litig.*, 609 F. Supp. 2d 1375 (J.P.M.L. 2009) (district selected largely because five of the six constituent actions were already pending there); *In re Allstate Ins. Co. Underwriting and Rating Practices Lit.*, 206 F. Supp. 2d 1371, 1372 (J.P.M.L. 2002). Twenty cases have already have been filed in New Jersey, and many other actions are likely to be filed in the District over the next few weeks. The claims filed in DNJ are representative of the types of claims that have been filed across the country.

VW is a New Jersey corporation, thus providing a central compelling connection to New Jersey where it maintains a number of its key operations.[4] VW was founded in Englewood Cliffs, New Jersey in 1955. The VW/Audi/VCI Eastern Region offices are in Woodcliff Lake, N.J. VW maintains its Product Liaison Group in Ridgefield, Edgewater, and Allendale, N.J., with its American Engineering and Environmental Office, Audi Test Fleet operations in Allendale, N.J., and its Parts Distribution Center in Cranbury, N.J. These connections are significant. The state of incorporation shows VW's choice regarding which state's corporate laws it believes should govern its conduct. New Jersey's corporate law may, therefore, play a significant role in shaping some of the relief sought in the underlying cases, including questions about VW's continued sale of vehicles in the United States, and reforms that must be undertaken to ensure that VW changes its corporate culture to avoid future fraudulent conduct. Moreover, the presence of the VW/Audi test fleet in New Jersey means that real world testing of the subject vehicles was performed in New Jersey and the VW Engineering and Environmental Office was

---

[4] *See* http://www.volkswagengroupamerica.com/locations.html (last visited September 28, 2015) for a map of VW's domestic operations.

-5-

responsible for, among other matters, reporting on VW's "clean diesel" technology to Congress in 2011.[5]

The critical evidence in the case – including both documents and witnesses – is likely to be in Germany. Therefore, an East Coast forum like New Jersey makes a lot more sense logistically that a West Coast forum. VW's domestic operations appear to have played a limited role in the implementation of the "default device" scheme – conducting limited emissions testing and marketing vehicles that were designed in Germany and manufactured at various facilities both within and outside of the United States.[6] On the other hand, the leading design, engineering and technical teams in Germany designed, implemented and perpetuated the global "default device" scheme. Depositions of personnel up and down the chain of command in VW's headquarters and engineering centers in Germany can be expected, along with extensive review of evidence, including years of documentation. Indeed, in the immediate wake of the NOV, VW's CEO and the heads of technology for two of VWs groups have resigned; the list of witnesses will only begin at the top of the organization where decisions were made before it works its way down the organization where the decision was implemented in the design and manufacture of the vehicles.

Germany will be a source of witnesses and evidence from not only from VW, but also from other entities involved in the events leading to this litigation. For example, the software used by VW in the "default device" was created by the German company Bosch.[7] Bosch is

---

[5] *See notes* 3 and 4.

[6] *See* http://www.bloomberg.com/news/articles/2015-09-25/volkswagen-said-to-manage-faked-test-results-from-german-offices (last visited September 28, 2015).

[7] *See e.g.* http://www.autonews.com/article/20150927/COPY01/309279989/bosch-warned-vw-about-illegal-software-use-in-diesel-cars-report-says  (last visited September 28, 2015).

based in Stuttgart, Germany.[8] Similarly, Mercedes Benz, which developed the emissions technology used by VW prior to its decision to bring the matter in-house (and use the "defeat device), will be a source of discovery, and also is based in Germany.[9] Finally, VW's testing facility (like each of its testing facilities globally) used equipment provided by Graz, an Austrian company.[10]

Given that most of the parties and potential witnesses will be required to travel (and/or counsel must travel to them) regardless of where the related cases are transferred, the ready accessibility and availability of frequent air service and travel accommodations are another reason for selecting Newark, New Jersey as the appropriate forum site. Newark is easily accessible to Germany. New Jersey is much closer and more convenient to Europe than any other District Court where an action is pending. Attorneys and witnesses also will find it convenient to travel to and from Newark (where Judge Linares' courtroom is located), due to easy airport connections from Newark Liberty International Airport, the other major airports serving the New York metropolitan area, and significant Amtrak train service on the Northeast Corridor. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2002) (transferring litigation to a district court "in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services."); *accord In re Laughlin Products*, *Inc., Patent Litig.*, 240 F. Supp. 2d 1358, 1359 (J.P.M.L.2003) (transferring to "an accessible

---

[8] *See* http://www.bosch.com/en/com/innovation/corporate_research/locations_corporate_research/locations.html (last visited September 28, 2015).

[9] *See* http://www.nytimes.com/2015/09/27/business/as-vw-pushed-to-be-no-1-ambitions-fueled-a-scandal.html (last visited September 28, 2015).

[10] *See* note 6.

metropolitan district"). Further, VW is very familiar to New Jersey maintaining key Engineering and Environmental Offices, Product Liaison, Technical and Regional operations in New Jersey.[11]

### B. The District of New Jersey Has the Expertise and Resources Necessary to Manage the Related Actions.

The Panel considers whether a potential transferee forum has the necessary resources and expertise to handle consolidated litigation. *See*, *e.g.*, *In re MethylMethacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006) (transferring to a district that "is well equipped with the resources that this complex antitrust docket is likely to require"); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (concluding that the transferee forum was "equipped with the resources that this complex antitrust docket is likely to require"); *In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353, 1355 (J.P.M.L. 2005) (concluding that the transferee forum "possesses the necessary resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require"). The District of New Jersey is a large urban court that is well-equipped to handle this litigation.

The District has unrivaled experience in litigation involving complex litigation involving European companies, because so many of those companies have their United States headquarters in the state. For example, New Jersey is home to many major European automakers, including BMW, Jaguar, Maserati, Range Rover, and Volvo. The district also was the home of Mercedes Benz for many years before the company relocated to Georgia. Of course VW is very familiar with New Jersey. VW has retained its historical ties to New Jersey not only through its Eastern Regional Management center and test fleet, but also by virtue of the fact that it remains a New Jersey corporation, governed by the corporate code of New Jersey. Most importantly, VW continues to maintain its Engineering and Environmental Offices in New Jersey.

---

[11] *See* note 4.

Many other major German companies, including Bayer, BASF, EMC Chemicals, Evonik Degussa, Helm, Hoechst, Linde Gas, and Miele, along with numerous other European companies, maintain their U.S. headquarters in New Jersey. Similarly, many major U.S. companies including, among others, Chubb, Honeywell, Johnson & Johnson, Merck, Prudential, and Verizon are based in New Jersey. Given the number of large foreign and domestic companies headquartered in the District of New Jersey, the district has unrivaled experience in complex litigation generally and in particular, litigation involving European companies.

The most recent Federal Court Management and Caseload Statistics for the District of New Jersey indicate that it is not unduly congested, and that it has the capacity to handle this litigation.[12] In an MDL matter, "[t]he percentage of cases over three years old is an especially useful basis for comparing the various court dockets." D. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 6:17 at 210-11 (2008). The District of New Jersey has only 6.5% of its civil cases pending for three years or more with an historic figure far lower than 6%.[13] The importance of the median time to disposition in the district courts has previously been recognized by the Panel as an important consideration. *See In re National Student Marketing Lit.,* 368 F. Supp. 1311, 1318 (J.P.M.L. 1972). The District of New Jersey median time to disposition for all cases is a mere 6.9 months.[14] These facts demonstrate the District of New Jersey's ability to resolve this case in a timely and efficient manner. Therefore, the District of New Jersey is optimally situated, experienced and uniquely capable of effectively managing a complex litigation like the proposed MDL.

---

[12] http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/03/31-2 (last visited on September 23, 2015)

[13] *Id.*

[14] *Id.*

### C. Transfer to the Honorable Jose L. Linares Is Appropriate

One of the most important considerations the Panel faces is whether the judge assigned to the case has the necessary experience and the appropriate temperament to handle a large, complex civil litigation. *See In Re Paxil Prods. Liab. Lit.*, 296 F. Supp. 2d 1374, 1374 (J.P.M.L. 2003) (cases transferred where judge was experienced and district had capacity to handle the litigation); *In re Vision Serv. Plan Tax Litig.,* 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) ("[W]e are assigning this litigation to an experienced jurist with the ability to steer this litigation on a prudent course"); *In re African-Am. Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002) (transferee forum is proper where "the judge assigned to the action pending in this district is a seasoned jurist who can steer this litigation on a steady and expeditious course"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003)("[W]e have searched for a transferee judge with the time and experience to steer this litigation on a prudent course."). When there is no geographical focal point because the litigation is national (or global) in dimensions, it is prudent to focus on the "transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F.Supp.2d 1365, 1367 (J.P.M.L. 2007).

All cases filed in the District of New Jersey, (twenty to date) have been assigned to Judge Linares. Judge Linares is a highly credentialed and experienced jurist who has served on the federal bench since 2002, and would be an ideal judge to preside over this complex litigation. Judge Linares has overseen prior MDLs and successfully managed other similarly complex litigations for more than a decade. *See, e.g.*, *Altana Pharma AG v. Teva Pharmaceuticals USA Inc.,* No. 04-cv-02355 (D.N.J.); *In re Hypodermic Prods. Antitrust Litig.*, No. 06-cv-0174

-10-

(D.N.J.); *In re Bayer Phillips Colon Health Probiotic Sales Practices Litig.*, No. 11-cv-3017 (D.N.J.); *In re Arbinet-Thexchange, Inc.*, No. 05-cv-4404 (D.N.J.); *In re PDI Sec. Litig.*, No. 02-cv-0211 (D.N.J.); *McGuire v. BMW of N. Am.*, No. 13-cv-7356 (D.N.J.); *Morris v. BMW of N. Am.*, No. 13-cv-4980 (D.N.J.); *Wiseberg v. Toyota Motor Corp.*, No. 11-cv-3776 (D.N.J.); *Gotthelf v. Toyota Motor Sales, USA, Inc.*, No. 11-cv-4429 (D.N.J.); *Millman v. Subaru of Am., Inc.*, No. 07-cv-4846 (D.N.J.). Judge Linares has proven trial management as well as settlement skills that can be leveraged and applied here.

Moreover, Judge Linares has gained a well-deserved reputation for effective and timely case-management. His docket is never overly crowded, and he never has motions listed on the Administrative Offices' six-month list. He has substantial and varied trial experience (both as an attorney and as a judge). More importantly, he is a hands-on, strong case manager who will understand the important policy issues implicated by this case. These skills are essential to effectively steer this sprawling case to an efficient and fair resolution for plaintiffs and defendants. Finally, Judge Linares currently presides over only one MDL, which involves claims against a single defendant alleging defective decking materials. *See In re: GAF Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2577, ECF No. 46.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request an Order granting Transfer and Coordination to the Honorable Jose Linares in the District of New Jersey Pursuant to 28 U.S.C. § 1407.

Respectfully Submitted,

| | |
|---|---|
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP | SEEGER WEISS LLP |
| By:   /s/ Elizabeth J. Cabraser<br>        ELIZABETH J. CABRASER | By:   /s/ Christopher A. Seeger<br>        CHRISTOPHER A. SEEGER |

*Attorneys for Plaintiffs*

Dated:  September 29, 2015

| | |
|---|---|
| James E. Cecchi<br>Lindsey H. Taylor<br>CARELLA, BYRNE, CECCHI,<br>OLSTEIN, BRODY & AGNELLO, P.C.<br>5 Becker Farm Road<br>Roseland, New Jersey  07068-1739<br>(973) 994-1700 | Elizabeth J. Cabraser<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94114<br>(415) 956-1000 |
| Gary E. Mason<br>Esfand Y. Nafisi<br>Benjamin Branda<br>WHITFIELD BRYSON & MASON LLP<br>1625 Massachusetts Ave., NW, Ste. 605<br>Washington, DC 20036<br>(202) 429-2290 | Steven E. Fineman<br>David S. Stellings<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>250 Hudson Street, 8th Floor<br>New York, NY  10013<br>(212) 355-9500 |
| Christopher A. Seeger<br>Jeffrey S. Grand<br>Scott Alan George<br>SEEGER WEISS LLP<br>77 Water St., 26th Fl.<br>New York, NY 10005<br>(212) 584-0700 | Adam J. Levitt<br>Edmund S. Aronowitz<br>GRANT & EISENHOFER P.A.<br>30 North LaSalle Street, Suite 1200<br>Chicago, Illinois  60602<br>(312) 214-0000 |
| Alexander H. Schmidt | Timothy G. Blood<br>Thomas J. O'Reardon<br>Paula M. Roach |

Michael Jaffe
Malcolm T. Brown
Correy A. Kamin
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Ave.
New York, New York 10016
(212) 545-4600

Robert L. Herbst
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
(646) 543-2354

Stephen DeNittis
DENITTIS OSEFCHEN, P.C.
5 Greentree Centre, Suite 410
Marlton, New Jersey 08053
(856) 797-9951

Richard J. Lantinberg
THE WILNER FIRM, P.A.
444 E. Duval Street
Jacksonville, Florida 32202
(904) 446-9817

Eric J. Artrip
D. Anthony Mastando
THE LAW OFFICES OF
MASTANDO & ARTRIP LLC
301 Washington Street, Suite 302
Huntsville, Alabama 35801
(256) 532-2222

Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
100 South Broad St., Suite 705
Philadelphia, PA. 19110-1061
(215) 545-7200

Edward A. Wallace
Amy E. Keller
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
(619) 338-1100

Peter Prieto
John Gravante III
Matthew P. Weinshall
PODHURST ORSECK P.A.
25 West Flagler Street, Suite 800
Miami, Forida 33130
(305) 358-2800

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Archie I. Grubb, II
Andrew E. Brashier
BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36104
(334) 269-2343

Michael A. Kelly
Khaldoun A. Baghdadi
WALKUP, MELODIA, KELLY
& SCHOENBERGER
650 California Street, 26th Floor
San Francisco, California 94108
(415) 981-7210

Kim D. Stephens
Jason T. Dennett
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
(206) 682-5600

Gregory F. Coleman
GREG COLEMAN LAW PC
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
(865) 247-0080

Richard M. Golomb

-14-

(312) 346-2222

Randee M. Matloff
NAGEL RICE, LLP
103 Eisenhower Parkway
Suite 201
Roseland, NJ 07068
(973) 618-0400

*Attorneys for Plaintiffs*

GOLOMB & HONICK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 278-4449

Brian L. Clobes
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
1101 Market Street, Suite 2650
Philadelphia, PA 19107
(215) 864-2808