BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN" DIESEL MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | MDL No. 2672 |

PLAINTIFF WILLIAM BUKLAD'S CONSOLIDATED RESPONSE TO MOTIONS TO
TRANSFER TO CENTRAL DISTRICT OF CALIFORNIA, EASTERN DISTRICT OF
VIRGINIA AND SOUTHERN DISTRICT OF TEXAS AND IN SUPPORT OF
TRANSFER TO DISTRICT OF COLUMBIA

William Buklad, plaintiff in *Buklad v. Volkswagen A.G., et al.*, No. 1:15cv01650-RMC

(D.D.C.) respectfully submits this consolidated response to the three pending motions for

transfer of all Related Actions filed on behalf of purchasers and lessees of Volkswagen and Audi

"clean diesel" vehicles from 2009 through 2015 pursuant to 28 U.S.C. § 1407.  For the reasons

set forth below, Plaintiff supports the transfer of the Related Actions to a single district for

coordinated or consolidated pretrial proceedings, and respectfully requests that the Related

Actions be transferred to the Honorable Rosemary M. Collyer, or one of the other experienced

and capable jurists, in the United States District Court for the District of Columbia.

## SUMMARY OF ARGUMENT

As the prior motions and responses make clear, there is no dispute that the more than 250

Related Actions should be transferred pursuant to 28 U.S.C. § 1407 and coordinated and

consolidated for pre-trial purposes.  The issue here is which jurisdiction would be best-suited and

the most convenient forum for pre-trial prosecution of all the Related Actions this MDL.

Plaintiff Buklad opposes transfer to the Central District of California; the Eastern District of

Virginia, Alexandria Division; the Southern District of Texas; and the Northern District of

Alabama; Northern District of Ohio; Northern District of California; Eastern District of

Michigan, Eastern District of Tennessee, the Southern District of Illinois, and District of New Jersey suggested as venues thus far in the responses.

No other proposed transferee forum presents an equal number of distinctive compelling factors as the District of Columbia.  The U.S. Department of Justice's Environment and Natural Resources Division announced on September 25, 2015 that it was conducting a criminal probe of Volkswagen and "working closely with the EPA in the investigation into these allegations." Earlier on the same day, the EPA head of transportation and air quality announced that the EPA would be cracking down on Volkswagen and the company could face fines of $37,500 per vehicle in the U.S. and a penalty up to $18 billion.  On October 14, 2015, AUTO NEWS reported that the U.S. Federal Trade Commission had joined the investigation into Volkswagen and was coordinating with the DOJ and EPA.  Plaintiff Buklad supports transfer to the District of Columbia as the ideal, best-suited and most convenient forum for this litigation, because it is:

1.      Home to the United States Environmental Protection Agency ("EPA"), the federal agency whose ongoing investigation, test results and witnesses will play a central role in this litigation, and where a transfer to the District of Columbia will support coordination with that investigation that is closely intertwined with all Related Actions, as well as provide a convenient location for depositions of EPA witnesses;

2.      A jurisdiction that will permit critical EPA witnesses to be subpoenaed to testify at trial;

3.      A jurisdiction that is 24 miles away from the U.S. headquarters of Defendant Volkswagen Group of America, Inc. in Herndon, Virginia, and a location that will be convenient for many of the key witnesses and the location of documents, and will make it possible to subpoena critical Volkswagen witnesses to testify at trial;

4.      A jurisdiction that provides three major international airports and hotel accommodations that will be convenient for witnesses traveling from the headquarters of Defendant Volkswagen A.G. in Wolfsburg, Germany, and which is far closer for German travelers than the alternatives in the Central and Western regions of the U.S.;

5.      Home to the United States Department of Justice ("DOJ"), the agency conducting the ongoing investigation of Volkswagen simultaneously with the private civil litigation, where transfer to the District of Columbia will support close the coordination with the federal government investigation;

6.      Home to the United States Federal Trade Commission ("FTC"), another federal agency reported to be participating in the investigation of Volkswagen simultaneously with the private civil litigation, where transfer to the District of Columbia will support close the coordination with the federal government investigation;

7.      A jurisdiction where the district court judges have abundant experience is coordinating private civil litigation with the federal government investigations – here involving *three* federal government agencies;

8.      A jurisdiction that will be convenient for counsel and for Volkswagen witnesses based in other manufacturing facilities locations in the Eastern half of the U.S., such as Chattanooga, Tennessee and Morgantown, West Virginia, when required to travel to and from Washington, D.C., due to easy airport connections from Ronald Reagan International Airport, Dulles International Airport, and Baltimore/Washington International Thurgood Marshall Airport, and significant Amtrak train service along the Northeast Corridor.

9.      A jurisdiction where currently five filed cases have already been consolidated before the Honorable Rosemary M. Collyer who is eminently qualified to preside over this

litigation with substantial experience presiding over RICO, Magnuson-Moss, environmental and product liability matters and other cases involving complex issues, as the Panel has previously recognized in transferring MDL No 1880 to Judge Collyer in 2007 (terminated in 2013); and

10.     A jurisdiction with both vast experience in the management of MDL cases and complex litigation, as well as a district with favorable docket conditions when compared to the competing jurisdictions.

For these reasons, and those discussed below, Plaintiff Buklad respectfully requests that the Panel order all Related Actions be transferred to the District Court for the District of Columbia and coordinated or consolidated before Judge Collyer for pretrial proceedings.

## ARGUMENT

### I.     Transfer and Consolidation of the Volkswagen Cases is Appropriate and Necessary

Plaintiff Buklad believes that all Related Actions should be consolidated in a single judicial forum because each concerns common predominant questions of law and fact. *See In re Union Pac. R.R. Co. Emp. Practices Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004); *In re: Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). Specifically, each Plaintiff alleges that the Defendants, for nearly a decade, had marketed and sold hundreds of thousands of Volkswagen and Audi diesel cars in the United States based on the false claim that such cars enjoyed extremely high fuel mileage coupled with low emissions, but in fact, had installed sophisticated software that was designed to circumvent and artificially suppress the results of official vehicle emissions testing.  This software, known as a "defeat device," resulted in cars that meet emissions standards in the laboratory or state testing station but, during normal operation, actually emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations.

4

Consequently, prosecution of the Related Actions will involve many of the same documents and witnesses. Consolidation is thus appropriate as it will "promote the just and efficient conduct of this litigation." *In re Union Pac. R.R. Co. Emp. Practices Litig.*, 314 F. Supp. 2d at 1384; *accord In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("[T]he private actions raise common questions of fact concerning the existence, scope and effect of the alleged conspiracy, and therefore transfer is necessary in order to prevent duplication of discovery, eliminate the possibility of inconsistent pretrial rulings, and streamline the rest of the pretrial proceedings as well.").

As set forth below, Buklad respectfully submits that the District of Columbia is the most appropriate transferee forum for several reasons.

## II.    The District Court for the District of Columbia is the Most Appropriate Transferee Forum

Factors frequently considered by the MDL Panel when selecting the proper venue for transfer and consolidation or coordination include: (1) the pendency of a government investigation; (2) the respective caseloads of the proposed transferee district courts; (3) the familiarity and expertise of the transferee district of with the underlying issues present in the litigation; and (4) the accessibility of the proposed transferee district to parties and witnesses. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010); *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); *In re SIGG Switzerland (USA), Inc., Alum. Bottles Marketing and Sales Practices Litig.*, 682 F. Supp. 2d 1347, 1349 (J.P.M.L. 2010); *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003); *In re Pre-filled Propane Tank Antitrust Litig.*, 53 F. Supp. 3d 1383, 1384 (J.P.M.L. 2014). Each of these factors militates strongly in favor of transferring

the Related Actions to the United States District Court for the District of Columbia over any of the other districts where Related Actions have been filed.

### A.    The Pendency of EPA's and DOJ's Investigations in the District of Columbia Strongly Favors It as the Transferee Forum

On September 18, 2015, the United States Environmental Protection Agency Air Enforcement Division, Office of Civil Enforcement in Washington, D.C. ("EPA") issued a Notice of Violation ("NOV") to Volkswagen A.G. and Volkswagen Group of America, Inc. (collectively, "Volkswagen"), detailing the illegal use of a software-based "defeat device" in diesel automobiles manufactured since 2009.[1]  As described in the NOV, the sole purpose of this device was to cheat on emissions tests by engaging full emissions controls only when undergoing official emissions testing.  At all other times, the emissions controls are de-activated, and the vehicles emit noxious pollutants at up to 40 times the legal limit.  This has sparked investigations by the EPA; the United States Department of Justice ("DOJ") and the Federal Trade Commission ("FTC") – all conducted in Washington, D.C.

The federal government is also a victim of Volkswagen's fraud.  Charged with regulating emissions that harm the nation's air quality, the EPA was deceived by Volkswagen's fraudulent scheme.  The EPA is responsible for enforcing federal laws and regulations involving the environmental harm resulting from Volkswagen's fraudulent conduct.  Its ongoing investigation and enforcement proceedings in the District of Columbia are expected to seek substantial monetary penalties and fines, in addition to other relief.

As the Panel has held on several occasions, the location of a government investigation often is a dispositive consideration in the selection of a transferee forum, and it strongly weighs

---

[1]    The NOV is available at http://www3.epa.gov/otag/cert/documents/Voldswagen-nov-caa-09-18-15.pdf.

in favor of Buklad's request for transfer of all Related Actions to the District Court for the District of Columbia. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d at 1378 (finding the presence of grand jury proceedings and government investigation in the district provided efficiencies in the pretrial proceedings of the private lawsuits); *In re: Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) ("The presence of government investigation and federal grand jury in" a district "tilts toward centralization in" that district); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (selecting appropriate transferee forum based on, *inter alia*, the site of the government investigation); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. at 936 (finding that the fact that the grand jury convened in the District of Hawaii was "an important factor favoring th[at] District"); *In re Refrigerant Gas Antitrust Litig.*, 334 F. Supp. 996, 997 (J.P.M.L. 1971) (despite the fact that the government's criminal action had been stayed shortly after filing and no discovery had commenced, subsequent private class actions were transferred to district in which grand jury action was proceeding); *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970) (when selecting a transferee district, "[p]erhaps the most important factor is the pendency of the Government action."); *see also In re Multidistrict Private Civ. Treble Damage Antitrust Litig.*, 311 F. Supp. 1349, 1351 (J.P.M.L. 1970) (holding that the Central District of California was the appropriate transferee forum because it was where the United States brought its antitrust enforcement action and where grand jury documents that plaintiffs sought to use were impounded and was thus the "center of gravity" of the litigation).

The Panel's decision in *In re Hawaiian Hotel* aptly demonstrates the often dispositive nature of this factor. In *Hawaiian Hotel*, the Panel transferred to and consolidated related class actions in the District of Hawaii, because, notwithstanding the general inconvenience of that

forum, it was where the government had brought suit and therefore could "best facilitate the coordination of the private actions with the seminal Government civil action that [wa]s still pending there." 438 F. Supp. at 936; *see also In re South Central States Bakery Prods. Antitrust Litig.*, 433 F. Supp. 1127, 1130 (J.P.M.L. 1977); *In re Griseofulvin Antitrust Litigation*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).

The Panel's reasoning in *Hawaiian Hotel* and the other above-cited consolidation decisions is eminently sensible and applies with equal force in this MDL. Indeed, where, as here, a government investigation is proceeding simultaneously with private civil litigation, careful coordination between the government and private claims is often necessary. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979). As the Panel has found on several occasions, such coordination is more readily accomplished in the district in which the government investigation is proceeding. *See, e.g.*, *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transferring private class actions to the same district as the pending grand jury investigation where documents relied upon by grand jury were located); *In re Cal. Armored Car Antitrust Litig.*, 476 F. Supp. 452, 454 (J.P.M.L. 1979); *In re Fine Paper Antitrust Litig.*, 446 F. Supp. 759, 761 (J.P.M.L. 1978) (deciding factor in picking transferee forum was presence of many documents subpoenaed by grand jury, which would best facilitate any necessary coordination between private actions and government proceedings).

Even though some of the alleged collusive activity at issue may have occurred across the United States, and the Plaintiffs and Defendants' manufacturing and distribution facilities are dispersed throughout the country, the fact that DOJ's, the EPA's and the FTC's investigations are being run out of Washington, D.C., in essence makes D.C. "the center of gravity for the

litigation[,]" *In re Multidistrict Private Civ. Treble Damage Antitrust Litig.*, 311 F. Supp. at

1351.

As such, and in light of the ongoing DOJ and FTC investigations into the Defendants'

behavior, which are centered in Washington, D.C., and the critical involvement in this case of the

employees, documents and facilities of the EPA that will be witnesses in and produced in the

litigation, Buklad respectfully submits that the Related Actions should be transferred to the

District Court for the District of Columbia.

**B.    The Honorable Rosemary M. Collyer Has Significant Experience Presiding
        Over Complex Class Actions**

The availability of an experienced and capable judge familiar with the litigation is another

important factor in selecting a transferee forum. *In re Ampicillin Antitrust Litig.*, 315 F. Supp. at

319.  *See also In Re Paxil Prods. Liab. Lit.*, 296 F. Supp. 2d 1374, 1374 (J.P.M.L. 2003) (cases

transferred where judge was experienced and district had capacity to handle the litigation); *In re

Vision Serv. Plan Tax Litig.,* 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) ("[W]e are assigning

this litigation to an experienced jurist with the ability to steer this litigation on a prudent

course"); *In re African-Am. Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L.

2002) (transferee forum is proper where "the judge assigned to the action pending in this district

is a seasoned jurist who can steer this litigation on a steady and expeditious course"); *In re New

Motor Vehicles Canadian Export Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L.

2003)("[W]e have searched for a transferee judge with the time and experience to steer this

litigation on a prudent course.").

Judge Collyer was appointed to the bench in 2003, and in addition to MDL 1880, *In re

Papst Licensing GMBH & Co. KG Litigation* involving patent infringement actions against digital

camera manufacturers, Judge Collyer has presided over a number of actions brought under the

RICO, Magnuson-Moss, consumer protection, products liability and environmental laws including *Danzinger v. Ford Motor Company*, 402 F.Supp.2d 236 (D.D.C. 2005); *Kasparian v. Eli Lilly and Company*, No. 06-cv-290 (RMC), 2007 WL 7700419 (Apr. 17, 2007); *Williams v. The Purdue Pharma Co.*, 297 F.Supp.2d 171 (D.C.C. 2003); *Netherland v. Eli Lilly and Company*, No. 04-cv-00654 (RMC), 2006 WL 626922 (Mar. 13, 2006); *Government of the Province of Manitoba v. Salazar*, 926 F.Supp.2d 189 (D.D.C. 2013); *Basel Action Network v. Maritime Admin.*, 370 F.Supp.2d 57 (D.D.C. 2005); *Anacostia Riverkeeper v. Washington Gas Light Co.*, 892 F.Supp.2d 161 (D.D.C. 2012); and *Companhia Brasileira Carbueto de Calcio-CBCC v. Applied Indus. Materials Corp.*, 887 F.Supp.2d 9 (D.D.C. 2012).  Judge Collyer has similarly presided over a number of class actions, including *Stephens v. US Airways Group, Inc.*, No. 07-cv-1264 (RMC) (D.D.C. Apr. 30, 2015); *Greenberg v. Colvin*, 63 F.Supp.3d 37 (D.D.C. 2014); and *Johnson v. District of Columbia*, 248 F.R.D. 46 (D.D.C. 2006).

Judge Collyer thus is well-prepared to manage this MDL.

### C.    The District of Columbia Has Few MDLs Pending Before It Compared to Many of the Districts in the Related Actions and a Lighter Caseload Per Judge

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel also considers the number of MDLs currently pending in a potential transferee district. *See In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003) (transferring to a forum that "is not currently overtaxed with other multidistrict dockets"). The District of Columbia has 7 pending MDLs, including MDL 1880 assigned to Judge Collyer which is also listed on terminated MDLs,[2] and a good balance of substantial MDL experience, but

---

[2]    *See* Multidistrict Litigation Terminated through September 30, 2014 at 2, available at http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Terminated_Litigations-2014.pdf.

yet not a district that is overtaxed with pending multidistrict dockets.[3]  The District of Columbia thus compares favorably to many of the competing forums:  Central District of California (11 MDLs pending); the Eastern District of Virginia, Alexandria Division (1 MDL); the Southern District of Texas (3 MDLs); the Northern District of Alabama (2 MDLs); Northern District of Ohio (6 MDLs); Northern District of California (18 MDLs pending); Eastern District of Michigan (3 MDLs); Eastern District of Tennessee (2 MDLs); the Southern District of Illinois (2 MDLs); and District of New Jersey (18 MDLs).

In addition to a relatively light MDL docket, the District Court for the District of Columbia also currently has the lowest number of civil actions filed per judgeship by a wide margin, making it a favorable transferee forum.  *See In re Petroleum Prods. Antitrust Litig*., 419 F. Supp. 712, 719 (J.P.M.L. 1976).  As of June 30, 2015, only 170 civil actions were filed per judgeship in the D.D.C., a significantly lower number than in the alternative jurisdictions.[4]  In fact, the District of Columbia has relatively favorable docket conditions compared to the competing forums in a several statistics:

|  | Civil Filing per Judgeship | Pending Cases per Judgeship | Civil Filings to Disposition (Months) |
|---|---|---|---|
| District of Columbia | 170 | 218 | 8.2 |
| District of New Jersey | 565 | 591 | 7.8 |
| Eastern District of Virginia | 381 | 294 | 5.3 |
| Southern District of Texas | 318 | 635 | 7.2 |
| Eastern District of Michigan | 327 | 450 | 8.6 |
| Southern District of Ohio | 746 | 827 | 9.1 |
| Northern District of Ohio | 457 | 889 | 27.6 |
| Eastern District of Tennessee | 268 | 512 | 13.1 |

---

[3]      *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, available at http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-15-2015.pdf.

[4]      *See* United States District Courts – National Judicial Caseload Profiles, available at http://www.uscourts.gov/report-name/federal-court-management-statistics.

| | Civil Filing per Judgeship | Pending Cases per Judgeship | Civil Filings to Disposition (Months) |
|---|---|---|---|
| Southern District of Illinois | 375 | 1,149 | 35.5 |
| Northern District of California | 406 | 459 | 7.8 |
| Southern District of California | 244 | 460 | 6.5 |
| Central District of California | 511 | 445 | 5.5 |

### D.    The District of Columbia is a Convenient Forum for All Parties, their Counsel and Witnesses

The Panel frequently selects a proposed transferee forum based on a consideration of the ease with which the parties and potential witnesses will be able to litigate in that jurisdiction. *See In re Trasylol Prods. Dab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (selecting transferee district based, in part, on its "accessible metropolitan location"); *In re Mirapex Prods. Dab. Litig.*, 493 F. Supp. 2d 1377 (J.P.M.L. 2007) (choosing transferee forum, in part, because it was "easily accessible"). Moreover, where, as here, the constituent actions are geographically dispersed and no one district "stands out as the focal point for th[e] nationwide docket," thePanel finds persuasive the "relative convenien[ce]" of the transferee forum to all parties. *E.g.*, *In re Wireless Telephone 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003).

The District Court for the District of Columbia is 24 miles away from the U.S. headquarters of Defendant Volkswagen Group of America, Inc. in Herndon, Virginia and a location that will be convenient for most of the key defendant witnesses and the location of documents.  The District will be convenience for witnesses for the EPA and will enable the parties to issue trial subpoenas for EPA witnesses located in Washington, D.C.

The District Court for the District of Columbia is a highly convenient forum for this MDL for all parties, as it sits within a major metropolitan area in close proximity to three international airports (Reagan National Airport, Dulles International Airport and Baltimore/Washington International Thurgood Marshall Airport), and has countless hotels and

other business and legal resources.  The District of Columbia is thus an appropriate transferee

forum. *See In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005)

(holding that District of New Jersey was an appropriate forum because it "offers an accessible

metropolitan location...geographically convenient for...litigants and counsel; and [ ] the district

is equipped with the resources that this complex [ ] docket is likely to require."); *see also In re*

*Worldcom, Inc. Securities & "ERISA" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002); *In*

*re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006).

  Moreover, the Defendants conduct substantial business in and around the District of

Columbia and undeniably have a presence there.  *See In re: Southeastern Milk Antitrust Litig.*, 530

F. Supp. 2d at 1360 (finding that the Eastern District of Tennessee was an appropriate transferee

forum because, among other things, two of the defendants had a presence there); *see also In re*

*Novartis Wage and Hour Litig*., 460 F. Supp. 2d 1382, 1383 (J.P.M.L. 2006) (finding that a

transferee forum is appropriate if all defendants have a presence in the district).  Further, as

previously discussed, Defendants will have substantial contact with the District of Columbia as

this litigation proceeds given that the DOJ investigation is being run out of the Environmental

and Natural Resource Division in Washington, D.C.

  The location of some Volkswagen witnesses in Chattanooga, Tennessee or Morgantown,

West Virginia and Plaintiffs should not be a factor.  As the Panel has observed, "[t]he transferee

judge [] has considerable flexibility to tailor the pretrial proceedings to avoid unnecessary

inconvenience to [the parties] and [their] witnesses." *In re Republic National-Realty Equities*

*Sec. Litig.*, 382 F. Supp. 1403, 1406 (J.P.M.L. 1974) (citing Manual for Complex Litigation,

Part I, Section 2.50 (rev. ed. 1973); Fed. R. Civ. P. 45(d)(2)). Depositions indeed will likely be

taken where the witnesses reside, which as noted, is all over the country. *See In re Celotex Corp.*

"*Technifoam*" *Prods. Liab. Litig.*, 424 F. Supp. 1077, 1079 (J.P.M.L. 1977) ("[D]epositions of witnesses may still be taken where they reside.") (citing *In re Stirling Homex Corp. Sec. Litig.*, 405 F. Supp. 314, 316 (J.P.M.L. 1975); Fed. R. Civ.P. 45(d)(2)); *In re IBM*, 302 F. Supp. 796, 799 (J.P.M.L. 1969) ("[D]epositions can and should be taken at locations convenient to those witnesses.").

  **E.  The District Court for the District of Columbia Has Extensive Relevant Experience and Expertise**

  The District Court for the District of Columbia has considerable expertise handling the myriad issues presented by complex, multidistrict litigation.  The Panel has transferred 38 MDL cases to the District.[5]  *See, e.*g., *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869., No. 1:07-mc-00489-PLF-GMH (D.D.C); *In re Papst Licensing GMBH & Co. KG Litig.*, MDL No. 1880, Misc. No. 07-00493 (RMC) (D.D.C.); *In re Fed. Nat'l Mortgage Assoc. Securities, Derivative & ERISA Litig.*, MDL No. 1668, No. 04-1639 (RJL) (D.D.C.); *In re Endangered Species Act Section 4 Deadline Litig.*, MDL No. 2165, No. 1:10-mc-00377-EGS (D.D.C.*); In re Health Mgmt. Assocs., Inc. Qui Tam Litig., (No. II)*, No. 1:14-mc-00339-RBW (D.D.C.).  The District is, therefore, ideally-suited to oversee this complicated MDL from a procedural perspective.

  In sum, the District Court for the District of Columbia's demonstrated experience managing complex MDLs and class actions as well as its expertise with cases involving the automobile industry make it the ideal forum for this MDL.

---

[5] *See* Multidistrict Litigation Terminated through September 30, 2014 at 1-2, available at http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Terminated_Litigations-2014.pdf.

**F.      None of the Related Actions in Any District is Meaningfully Advanced**

The Related Actions were filed beginning September 21, 2015, shortly after the announcement of the E.P.A. on September 18, 2015 of the issuance of the Notice of Violation against Volkswagen detailing the illegal use of the "defeat device" in diesel automobiles, and the first motion to transfer was filed with the Panel on September 23, 2015.  None of the plaintiffs have been permitted to conduct discovery, and thus none of the Related Actions in any district is meaningfully advance.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff William Buklad respectfully requests that the Panel order that the Related Actions be transferred to the United States District Court for the District of Columbia and coordinated or consolidated for pretrial proceedings before the Honorable Rosemary M. Collyer.

Dated:  October 19, 2015

Respectfully submitted,

NUSSBAUM LAW GROUP, P.C.

By:   */s/ Linda P Nussbaum*
        Linda P. Nussbaum
        570 Lexington Avenue, 19th Floor
        New York, NY 10022
        Telephone:  (212) 702-7054
        Facsimile:  (212) 681-0300
        Email:  lnussbaum@nussbaumpc.com

*Counsel for Plaintiff William Buklad*